172648 Consolidated 173205 of the Payments of the Canadian National Railway Company and Wisconsin Central. Do you need a minute? No, before we start, there's a woman in the audience who is for hearing. Could she give her chair back? Sure. Okay, go ahead. Okay. Okay. You can move up any spot you'd like. Okay. Is that enough? But she needs a chair. No, she can sit on her own chair. Oh, you can sit on that thing? Okay, that's good. Sure. Or you can bring her to Council Table if you like. Whatever you want to do. Here, here. Let her come up here. That way she can see you talking. Otherwise, she may not hear you. Mr. Ford tends to fade off, you know, and you can't hear him sometimes. Okay. Council, you can put a chair right in front of your table if you'd like and let her sit on there. Okay. Thank you. Oh, she is 100. She's doing better than I am. Thank you very much. Thank you. Glad to have you here. All right. Did you call the case, Mary Ann? Okay. Would the two lawyers who are going to argue the case please step forward? Good afternoon, Your Honors. Kevin Ford on behalf of Wisconsin Central. Leslie Rosen on behalf of the Planned Parenthood. Okay. As you both know, it doesn't amplify when it records. Keep your voices up nice and loud. Would the appellants like to reserve any part of their time for rebuttal? Fine. All right. You may sit down and you may proceed. Pleased to call. My friend, Ms. Rosen, I'm here on behalf of Central Wisconsin. As the court knows, we are here because a counterclaim that we filed in a FELA action was dismissed by the trial court. This action starts with two employees, an engineer and a conductor on a train who were running the train, violated, based on our counterclaim, violated a number of state safety rules, speeding the train through warning signs and running into another train, another train which happened to be owned by the employer. You never filed suit on any of that until the employees filed their FELA action, correct? That's correct, Your Honor. But you could have, right? We could have. There's no question that we could have. And that really is the essence of the case. And really, we have the power to sue the employees. That's a well-established right. The question is whether the FELA abrogated that right by inference, not directly. By inference isn't arguably a counterclaim a device? I mean, that's pretty direct. Counterclaim is a device. There's lots of cases where it looks like that. Well, there's a lot. Not in a FELA context, but certainly we refer to it as a device. Well, I can give you the words of Judge Posner. He says, abrogation of a right of action by implication is unusual. He's interpreting federal law there, and he says it's very unusual. He thought it did by implication. We suggest that it did not. And a great majority of courts, including all courts of appeals that have considered the question, have determined that it is not a device for the reasons that I hope to explain. Keep in mind, when these two employees filed their suit, they say by virtue of their filing an FBI action, they are entitled to immunity under the property damage claims. And, frankly, that makes no sense. If one of the plaintiffs had filed suit and the other did not, the one who didn't file the suit would be, as your Honor referred to, completely subject to suit. And the one who filed the suit would be immune. Such a drastic change in the law, and that would be a drastic change in the law of abrogating the employer's right to file a counterclaim. Such a significant abrogation of a right doesn't come by implication. Congress knew what they were doing, and if they intended to eliminate all claims and counterclaims, they would have said so. And I don't know that they have said so in 1908, but the first decision in this area is over 30 years ago, and they never once amended the statute, which is, of course, strong evidence that they're content with the decisions of the courts on this subject. In particular, the four courts of appeals. Competitive negligence applies, right? Sure. Competitive negligence applies, doesn't it? Yes. So applying that would have the same result, unless maybe the engineer won the lottery or something. It would have the same result. It would offset their negligence against their claim, right? I'm not sure if I would repeat it. Yeah, just if their competitive negligence is that significant, then they wouldn't recover anything. That's true. And if you. . . If it was 100 percent, yeah. Yeah, if you recovered your. . . If they were saying this, it's possible that in the trial of this case, the plaintiff would get zero because of his. . . because of competitive negligence, and the railroad would recover 100 percent. Is that true? Right. Right. So. . . Okay. Well, the issue here is, you know, just to get back to the basic question, do they have the right to file the counterclaim? That's a. . . Well, there's the counterclaim, the device to discourage people from filing felon claims, and that's another question. I'm going to show you that it's not. When we leave here today, you will say. . . I can promise you it will not say anything when we leave here today. The Section 55, which we're talking about here, provides that a railroad cannot exempt itself from liability by using a contract, et cetera, et cetera, device. Key words. Railroad cannot exempt itself. That's the language in the statute. I don't see that language in the statute. I see any contract rule regulation or device whatsoever. Yes. The purpose or intent of which shall be to enable any common carrier to exempt itself. So you're relying on the exempt yourself. Yes. That's what it says. It says you can't do this to exempt yourself. Exempt yourself means eliminate any liability. Four courts of appeals have said this filing a counterclaim does not exempt the railroad from liability. And it certainly doesn't. I'll give you a simple example. Suppose in a personal injury case, the employee recovers a million dollars in a separate action, which is usually a separate action. I have the counterclaim. The railroad recovers 500,000. So the railroad doesn't exempt itself. But it's clearly a counterclaim is not an exemption. An exemption gets back to what was Congress dealing with here when they passed the FVLA? What they were concerned about, the legislative history is clear. What they were concerned about is these pre-employment contracts that employees had assigned that said, we will never sue the railroad no matter what. That's what they were after, and the legislative history is very clear on that. If you think you've got a pre-employment contract that eliminates your damages, that would be okay under FVLA? I don't think so. Yeah, a pre-employment contract that said you could only pay 50 cents on the dollar, that wouldn't be exempting itself, but it probably wouldn't be legal under FVLA either. I don't know. It's exempting yourself from 50% of your liability. No, it's reducing your liability. It's not exempting yourself at all. You can't change the language of the statute that says exempt. Okay. You know, we tangle with legislative history and the inferences that people want to draw about this or that, but when it gets down to it, read the statute. That's probably the best evidence of what was intended, and it was very clear, because that's exactly what they were doing. They were exempting themselves. So, you know, that's the heart of it. We've cited four, there are only four appellate decisions on this, four court of appeals. They have all said that by filing a counterclaim, a railroad does not seek to exempt itself, and they gave their reasons why, and they've explained that a counterclaim is a separate and independent claim, tried separately. That's referred to in Kavanaugh and Nargrin. Furthermore, the statute gets at contracts, rules, regulations, and devices. So what are they talking about there? The principle just then, generous, which, you know, words of a fellow, is that this is not like a contract or rule or regulation. A counterclaim is a claim. It's not like any of those enumerated prohibitive. You could not have broader language, could you, than any device whatsoever. Any device whatsoever. That's why, Judge, that's why. Nargrin says a similar device. It says any device whatsoever. And that is exactly why courts resort to the canon that gives them generous, because how do you resolve that? You look at the three words beforehand. And when you've got those three words beforehand, that means that it has to be like a contract or a rule or a regulation. The, you know, you don't, I don't like to say this, but you don't have to like the result there. You have to do it. You have to. It's not just not liking the result here. The result here that you're asking for would absolutely discourage plaintiffs who are injured as railroad employees from being sued. There's no dispute. And also, Judge, if I may, it would also enhance safety. It would also. Why would it enhance safety? Because employers would be more careful if they're subject to damage. Well, you think they're willing to get themselves hurt because they're afraid of damages? That doesn't. I think they could be more careful. But look at it another way. How bizarre is it? There's two people on this train. Two of them claim to be injured. Okay. What if there was a third person who was in the cab of that train who wasn't injured or, for some reason, didn't file a FELA action? We all agree that that third person is subject to the full damages for any destruction caused. And, therefore, the reality is that person is not going to be sued because they're not going to have enough money to pay that judgment. The reality is the suits get filed in response to plaintiffs' suits. That's when they get fired. You're getting to some of the practical implications. Yes. But what your job here today is to read the statute and decide what it says. Right. Congress could address that issue, and they've got 35 years to address it. And they haven't. So your job is to read the statute and apply federal law. Justice Hall, you know, she hit this right on the head. Railroads counterclaim is a device calculated to intimidate and exert economic pressure upon the plaintiff to curtail and chill his rights and, ultimately, to exempt the railroads from liability under FELA. And two colleagues disagreed. And the question before you is, how are we going to interpret the statute? There's certain you've been helped by history and prior decisions. In interpreting federal law, you look to federal authority. That's your job. And in particular, our Supreme Court has suggested if there is a split in federal authority, we look to the 7th Circuit so that people in Illinois don't go, huh, should I file federally or should I file in state court? Well, my other question to you, and that's the uniformity, which the plaintiffs have referred to, uniformity is national. And there are four U.S. Court of Appeals decisions. That covers about half the country. There are no Court of Appeals decisions contrary. Even Judge Posner isn't authority in decisive in any way. But I bet you nothing. You're to file federal law. An important consideration is uniformity. According to our Supreme Court case and other cases. That means national uniformity. Federal statute should be uniformly applied from California to New England. I mentioned the four Courts of Appeals. One of them I noticed was the Sprague case. One of the judges was Stephen Breyer. I mean, these are quality panels here. We're not talking about people who didn't consider some of the things you're talking about. And the fact that Congress obviously agrees with this uniform interpretation. They've read it there for 30 years. They know what to do about it if they disagree. And the contrary authority isn't at all persuasive. I mean, you've got a couple of cases, including primarily the Washington State case that was decided before you had any federal authority on here. So I respectfully submit that your job is to follow the federal law. And the federal law is very, very clear here. I think I probably haven't paid attention to the time. I think you are, unless there are more questions. Thank you. May it please the Court. This is a very unusual case because neither of us can come up before you and say, Judge, you have to rely on this case. This is not a case like that. This is a case where there is a split in authority. And in such a case, your job is to decide what is the better reasoned decision. Is there really a split in authority? Yes. I say Deering is clearly a split in authority. It is split, but is that authority? Deering, yes. And we disagree about whether this is judicial dicta or just obiter dicta. And I believe it is judicial dicta because the Court had to decide whether it was a device that exempted liability. The vote over for liability to reach its holding. And so I believe that's judicial dicta because it did have to. That was necessary. But even if it's obiter dicta, there's no reason not to follow it if it's persuasive and it's well thought out. And it's extremely well thought out. So my job is to tell you why is Deering in stat better authority than Kavanaugh. And the other three cases that follow Kavanaugh really just follow Kavanaugh. There's no real independent thought there. So, you know, first of all, you have to keep in mind, or I hope you keep in mind, that the FDLA has a very broad remedial statute. It's the first worker safety statute in the United States. It was first enacted in 1906 to protect railroad workers who were engaged in extremely hazardous work. And the railroads were holding all the cards before that, and the worker had nothing. So it's an exclusive remedy, and there's no workers' compensation for a railroad worker, and no common law right of action if you're injured in the United States in a railroad work where the railroad engages in interstate commerce. So this is the whole ball of wax for you. And it's a relaxed standard of proof for causation. You really, I used to say you just had to show a scintilla of evidence to prove your case. Just slight negligence. It's pure comparative negligence, which we do not have in the state of Illinois now. We had that originally in the 80s, but now we have, if it's over 50%, you're out. But that's not the case in an FDLA action. There is concurrent jurisdiction. The railroads cannot remove cases to federal court if they file here. And there's no assumption of risk, and it's a longer statute of limitations, three years instead of two. Let me ask you this. If Illinois does not have compulsory joinder of counterclaims, correct? I'm not sure. I'll assume you're right. I think I'm right. I think you're right. So these employees get injured. They file a FDLA case. Is there anything stopping the railroad from filing a separate counterclaim, separate lawsuit? Is there anything stopping the railroad from filing a separate counterclaim to recover for the damages caused to the locomotive? Maybe. First of all, I believe so, but maybe. First, we'll start with the collective bargaining agreement, which is not in the record here. So I don't know if that's a statement. Well, let's keep that out of it. That's a straight accident. The engineer drives into another locomotive, and he gets hurt, wrenches his back, files a FDLA case. Can the railroad file a separate claim, a separate case for the crash? Can they file it? Sure. Can they proceed on it? No. Okay. Why not? Why not? Because I think Section 55 exempts it. It would operate because the plaintiff would immediately file an FDLA action as a counterclaim, that to that, and then it would be barred, the property damage case would be barred because it's an attempt to show the rights of the worker. But what if the railroad said, no, he can have his FDLA claim all he wants. He can recover every nickel. He's entitled to recover. But I want, in my separate lawsuit, recover for the damages to the headlights of my locomotive. Well, first of all, we don't have that situation here, and we've never had it. I'm asking the question. Can that happen? I've never seen it happen in this state. I didn't see any case law on that point. I think it would be a hard-fought battle. And I think that what's good about Daring and Stack is the reality is they're very common-sense opinions. The bottom line is they're saying, if it looks like a duck, it quacks like a duck, it walks like a duck, it's a duck. And this is the same thing. This is an exemption. It is an attempt to chill the rights of the worker to keep him or her from pursuing any injury rights. There's no question. I mean, Justice McVeigh has had it right all along. There's no question. We're talking locomotives. They're asking in this case for over a million dollars. It's in their pleading. Well, what if they were asking for $50? I mean, what if they were asking for $50? Could they file a counterclaim in the municipal division of Cook County saying, I want the $1,500 for the broken headlights on a locomotive? He can file his wrenched back case in the law division and get $400,000. I mean, could they do that? That's my only question. Not who wins, not who loses. That's my question. As a practical matter, maybe they could pursue that, but I don't think so because I think it is – I mean, if there was no – I mean, theoretically, you've got five years to file a property damage claim and you've got three years to file an FBOA. I don't want you to spend all your time giving me the – They could miss the three – the plaintiff could bypass not injured so much within three years and then the railroad could file within the next two years a claim for property damage. Theoretically, you'd never see it happen because railroad workers don't have that kind of money. Nobody's going to file a suit. A railroad isn't going to file a suit for $1,500 or $50,000. But a locomotive is over a million dollars, maybe $3 million. The record doesn't show that, but the pleading does ask for over $1 million. But there's nothing in Section 55 or in FELA that prohibits the railroad from suing an employee for property damage, is there? No, there is not. It says it's Section 55 and 60 are what they are. What if a negligent employee just filed a personal injury claim to escape liability? You mean a FELA suit? Yeah. To escape liability? Yeah, if the railroad sues him for a million dollars, like you say, and then he just counterclaims because he broke his fingernail, you want us to say that he has – that the railroad cannot proceed? Yes. Bottom line, if you can find a lawyer who would file that suit, yes, I think so. Although that's unlikely, too, because no lawyer – a FELA lawyer is any personal injury lawyer. You're working on a contingency basis. You're working on a third. You're looking for a real suit. It makes it more practical. He sues for a $50,000 back injury knowing that he caused a million dollars in damages to the locomotive. Well, that might – Makes sense now, doesn't it? That might be what we have here. We've got two plaintiffs. I mean, this is on a motion to dismiss at 2-6-15. But the two plaintiffs, you can see from the complaint and from the answers to interrogatories, neither of these plaintiffs had surgery. I mean, these are not big cases. We're talking about higher positions here, not this case. But there is this case, that is what I'm saying, because these are not big cases. Well, but this case results in the law. Yes. The law is either going to be, yes, the railroad can file a counterclaim for property damage, or it can't. And the answer should be it can't. And this case exemplifies that. We have to have a basis for saying that. Okay. Well, first of all – You can't say it practically because it's fingernails versus lost legs and headlights versus destroyed locomotives. You know, it's either you can or you can't. I understand. And that's why I started out by talking about the broad remedial purpose of the FELA. This is a safety statute for the railroad worker who is engaged in an extra-hazardous occupation. And the goal is to protect that worker and to give that worker an exclusive remedy. And you can't give them the remedy and take it away at the same time. And under Justice Griffin's question, if the railroad decided to sue the employee for damage to their property, under your theory, the employee could file a FELA claim. Yes. And knock out any liability he would be subjected to on the basis of Section 55 and 60. Yes. Assuming there's a meritorious action, he can find a lawyer who's going to represent him. A lawyer's going to sign a document so that he's not or she's not subject to sanctions for a frivolous pleading. Yes. That's my position. Okay. And I think Deering – you know, Deering understands it. They don't mean however – No. I got it. I think – and the distinctions they make about Deering, why they say Deering isn't well – well-reasoned, I think are all easily distinguished. Deering is just a common-sense application of the rule, as Justice Mikva talked about it when Mr. Ford was arguing. They didn't – first of all, the Deering Court never acknowledged that the four cases were controlling, as they say in their reply brief at page 5. They didn't expand the meaning of exemption. It is an exemption. In this case, it's particularly an exemption since they're seeking over a million dollars, and it's highly unlikely that the claims of the two plaintiffs combined would ever total a million dollars. Plus, of course, there is comparative negligence in this case as an affirmative defense, so that whatever they do recover is going to be reduced significantly by their comparative negligence. There's nothing wrong with citing a law review article, which is included in the record, and you're not bound to just blindly follow the Four Circuit Courts. Your job is to consider the best-reasoned decision, and the best-reasoned decision here is about Stack and the law review article and the district court in Southern Illinois, the chief judge down there, David Hendren. And it's fine that – this is an attempt to chill the failure workers, the failure workers, but we don't want to have insurance for the locomotives. The plaintiffs do not have – this is – the Fremont case assumes, basically, that all the parties are on equal footing, that this is like a commercial case. It's not. Well, how frequent, if you know, how frequent is a property damage, an aspect of an injury caused by a plaintiff? I mean, it seems to me, in my limited knowledge of a few actions, most of the time, the train is causing the damage to the train. Individually. Right. Well, in my – I've been practicing 36 years. I've done a number of FELA cases, both plaintiff and defendant. I've never seen a property damage case before. I've never seen a plaintiff's – I've never seen a counterclaim before. I was really surprised. Well, I'm not talking about a counterclaim. I'm just talking about the fact that, typically, in FELA cases, it's – there is no property damage. Oh, I don't know about that. I mean, these trains collide. There's some cases. There's collisions. I'm sure there are some. But most of them, as a practical matter, involve an employee being injured by the train. Yes. Or, yes. Which is much more durable than the human body. Or they just go right to the insurance, I would assume. Why? I mean, why wouldn't you? If you're the owner of the – if you're the, you know, Wisconsin Railroad. And you get a segregation claim against the employee. Where's that going? Nowhere. Nowhere. These are not people. All right. I don't want to detract from your time. Okay. So, okay. The Dealing Court did not ignore the rule, which I'd never even heard of, statutory construction. That's an issue here. Ad justum generis. But the Dealing Court did consider it. They didn't ignore it. And what they did, though, is they considered all of the words, which that's another prime rule of statutory construction. Consider all the words in the statute and don't let any of them, you know, be ignored. And here we do have the word, or any device whatsoever. And so you consider that word, too, not just the words that go before it. You know, contract. It is in any device whatsoever, and it does exempt. What about Mr. Ford's argument about exempt itself? This is not an exemption because there's a possibility of some liability remaining after the counterclaim. It's illusory. It's illusory. It's absolutely illusory. Sure, it's possible. But, you know, it's possible. Not in this case it's not possible, but there may be a case. But typically it's illusory because locomotives are such massive things that cost so much money. You know, here we're talking over a million. And there's nothing in the record as to how much the damage was because all we got to is the complaint. But I did Google the cost. What is the cost of a locomotive? And if you can look and if you consider that an adjudicative fact, it's something you can look up as opposed to a fact of record. They're over 3 million bucks for locomotives. Yes, but if you don't, as Justice Pierce put it out, I'm not sure we want to have our different rules depending on whether it's money or a trade or a headline. No, no, but as a practical matter, that's what renders it illusory, the recovery that a plaintiff can have. What if a jury ultimately finds the injured worker 100% responsible? The injured worker gets nothing. Yeah, but why shouldn't he have to pay for the damage he caused? Well, why shouldn't he have to pay for legal fees for the railroad? This is America. That's the way it goes here. We have the American rule for damages. Everybody pays their own costs, and they're going to have it go to their insurance company. They're not going to get it from the worker who is disabled and unable to work. I mean, these guys, they were fired, I believe, after this. And if you look in the record, there are interrogatories to Mr. Edmonds, and it says, tell us what jobs you've looked for since this case. And he lists a whole bunch of them. I can tell you where on the record it is if you want to know. And he's not working. He's not working. That's it. These guys have nothing. Most of these workers, I mean, they make a good living, but they can't afford to pay for automotive, and it's a safety statute to protect the workers. They say in their briefs twice that this is also to protect railroads. That's not true. They quote Sinclair for that case, Sinclair v. Missouri. They cite it twice, but it's not true. The opinion after the sentence they cite, the opinion says, it was the conception of this legislation that the railroad was a unitary enterprise, its economic resources obligated to bear the burden of all injuries befalling those engaged in the enterprise arising out of the fault of any other member engaged in the common endeavor. These are big companies. So that's what it was designed for. What I also like, the practical purposes, Judge Erlich's opinion is very practical. He's got two really good reasons. His first reason is off because he had the statute of limitations wrong. But this is a case where the plaintiffs were in the scope of their employment. So if they're going to be sued for property damage, who's liable? They're only suing themselves under a theory of respondeat superior. They're not going to get to collect from these individuals. That's an important consideration. It also shows. But if that's true, then what are we talking about? Yeah, what's the problem? Well, I mean, if there's not really going to be any liability for them, where is that? So they have a counterclaim on fault. It means nothing. Well, I'm not saying that. I'm saying it's going to confuse the jury. It's going to inject all kinds of irrelevant and highly prejudicial evidence into the case. It's going to be very detrimental to a plaintiff to have all that going on. Some of it will be there as part of the affirmative defense of comparative negligence. Right. But to then put another layer on that is just an inappropriate, confusing and prejudicial part of a trial. I don't think there's no real purpose to it. And it's just going to have to play out. That sounds to me like the perfect grounds for a severance, trying to counterclaim in a separate trial. Well, sometimes they are. And that's one of the four cases that says that, that they have to be severed. I think Kavanaugh says it has to be severed for that purpose. But that's grueling. Now, who's going to pay for the plaintiff's attorney? Well, that's not before us. Well, but it's chilling. It makes it chilling. It adds to the chilling if the plaintiff has to hire a separate counsel to represent him or her in a separate lawsuit, property damage. And uniformity. I thought you said it would be easy. As for uniformity also, we are talking about national uniformity on one hand. But on the other hand, it will, as a practical matter, cause any plaintiff in his right mind who is facing a property damage suit will file in federal courts instead of state court if you rule otherwise. And that's ridiculous. Because it's going to set up for form shopping. Why would you file in state court if you could possibly be subject to a property damage counterclaim when you know based on the Southern District's two opinions and Blanchard and another case that follows, the case that precedes Deering and Deering, that they're not going that way. So there would be no reason for it. It would just be a disaster. Any other questions? I don't think so. Thank you, counsel. Thank you. A few comments, if I may be honest. I'm reminded of the language in the quote, I repeat, 16th of our reply brief that goes somewhat to Justice Griffin's comment about the scent in Kavanaugh and the state court in Minnesota mentioned that, mentioned some other good policy reasons that support Ms. Rosen's position. But they conclude, we are not legislators. In our view, Congress's silence on this issue speaks volumes. Therefore, we hold that the FLA does not preempt counterclaims for property damage. And that's, I think, the position that all courts are in. Some courts have expressed their disagreement with the outcome of these cases. And some of these cases, especially that case and the Milgram case, say, but our job is to do our job is to apply the law the way Congress wrote it. And this is this is the way they wrote it. And even if even if they were persuasive, which I don't think it is, we could spend a lot of time talking about Judge Posner's musings there about why he thinks it would be better that way. But that limits his hold to amnesty cases. The point of the matter is we have four U.S. courts of appeals who have decided to question. So even if you thought his dicta was more persuasive than those four authorities, I don't think you get the truth. The Supreme Court has said if the federal authority is reasonable and logical, then you must follow it. And I can't conceive of this court or another court reviewing those four decisions and saying these four cases are not reasonable and not logical. You might disagree with them, although I don't think you disagree. I don't think you disagree with them. But even if you disagreed, they certainly are reasonable and logical. And when you look at the statute the way they did. And again, I'm remembering there's an old decision by Justice Frankfurter where he criticizes his brother in saying, well, you've looked at the legislative history, you've applied all the canons, you've done this, you've done that, and now they're all done, I suggest you read the statute. You've been wanting to use that for a while. So if you read the statute as those four courts have, they say you have to come to the conclusion that a counterclaim is not an exemption. And this statute is specifically directed to exemptions. And I also believe that you would conclude that this statute is directed to contracts and the like, contracts, regulation rules and the like, not to separate causes of action that can be tried in separate proceedings. And there are two cases, not one, that say they should be in separate proceedings. I have nothing further unless the court has some questions. Thank you both. It's a really interesting question. And it was very well read. And you will hear from us. How'd they do? Were they okay? He's talking to you. I'm not talking to you. I don't want to confuse you. Oh, I lost. That's good. Thank you.